STATE OF CONNECTICUT *v.* RUBEN ROMAN
(AC 21586)

Foti, Flynn and Shea, Js.

*(One judge dissenting)*

Argued September 27—officially released December 4, 2001

*Michael A. Georgetti*, with whom, on the brief, were *Janis C. Jerman* and *Mark Rademacher*, assistant public defender, for the appellant (defendant).

*John A. East III*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Robin Cutuli*, assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Ruben Roman, appeals from the judgment of conviction, rendered after a jury trial,

of murder in violation of General Statutes § 53a-54a,[1] assault in the first degree in violation of General Statutes § 53a-59 (a) (1),[2] criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c (a) (1)[3] and risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21 (1).[4] On appeal, the defendant claims that the court improperly (1) deprived him of his constitutional right to present a defense when it failed to instruct the jury that it had to decide whether his use of cocaine left him so intoxicated that he lacked

[1] General Statutes § 53a-54a provides in relevant part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a) of this section, on the question of whether the defendant acted with intent to cause the death of another person."

[2] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[3] General Statutes § 53a-217c (a) provides in relevant part: "A person is guilty of criminal possession of a pistol or revolver when such person possesses a pistol or revolver, as defined in section 29-27, and (1) has been convicted of a felony or of a violation of subsection (c) of section 21a-279, section 53a-58, 53a-61, 53a-61a, 53a-62, 53a-63, 53a-96, 53a-175, 53a-176, 53a-178 or 53a-181d . . . ."

[4] General Statutes (Rev. to 1997) § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony."

the specific intent to commit murder and intentional assault, (2) violated his right to a jury trial by deciding, rather than asking the jury to decide, whether he had used a firearm in the commission of a class A, B or C felony for purposes of General Statutes § 53-202k,[5] and (3) failed to conduct a preliminary inquiry to determine if a hearing was required to investigate his claim that improper communication between one or more jurors and a family member of one of the victims had occurred during trial. We affirm the judgment of the trial court.

From the evidence adduced at trial, the jury reasonably could have found the following facts. On December 24, 1997, the defendant and his live-in girlfriend, Maria Torres-Arroyo, were hosting a late day holiday party for their respective families at the one family home they shared in East Hartford. During the party, the defendant consumed alcoholic beverages and ingested cocaine. The party lasted for several hours. At around midnight, the defendant left the party to drive his sister, his brother-in-law, his two nieces and his nephew to their home. Sometime around 2 a.m., the defendant returned home with his two nieces. He found Torres-Arroyo accompanied by her brother-in-law from a previous marriage, Israel Arroyo, her son, Ismael Arroyo, and her nephew, Eric Martinez, sitting around the dining room table. Both Ismael Arroyo and Martinez were under the age of sixteen.

Shortly after the defendant returned home, he and Torres-Arroyo engaged in a verbal argument. Torres-

---

[5] General Statutes § 53-202k provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

Arroyo went upstairs to prepare sleeping arrangements for the defendant's nieces, and the defendant followed her. The two argued briefly, though the source of the conflict is unclear. Torres-Arroyo returned to the living room downstairs, reclined on the sofa and watched television. Shortly thereafter, the defendant descended the staircase while loading a .45 caliber semiautomatic pistol. The defendant began screaming at Torres-Arroyo. He told her that he and his nieces were going to leave because they were not welcome.

The defendant approached Torres-Arroyo and told her: "You're not going to mess around with me no more, fuckin' bitch." He then fired his pistol at Torres-Arroyo, shooting her in her legs three times. After hearing the shots, Israel Arroyo rose from the table, where he and Martinez and Ismael Arroyo had been playing a game. The defendant, standing in the next room, turned toward Israel Arroyo and shot him in the abdomen. Israel Arroyo collapsed and crawled into the kitchen. The defendant followed him and fired two more shots at him. Those bullets traveled through Israel Arroyo's body and through the kitchen floor beneath him. Investigators later recovered the bullets from the basement of the house. In the meantime, Martinez escaped from the scene through a back door and Ismael Arroyo, as well as the defendant's two nieces, who had been in the basement, exited the house via the basement. Martinez and Ismael Arroyo reached a neighbor's house, where they asked neighbors to call the police.

The defendant returned to the living room to find Torres-Arroyo trying to use a cordless telephone to call for help. After engaging in a brief struggle with the defendant, Torres-Arroyo threw the telephone under a nearby Christmas tree. The defendant removed a box of ammunition from his pocket and reloaded his pistol. He then shot Torres-Arroyo four more times, hitting her in her abdomen, head and wrist. His shooting ceased

only after his pistol malfunctioned. The defendant tried to reload his pistol a second time to remedy the problem, but to no avail. The defendant also punched and kicked Torres-Arroyo, and struck her in the head with his pistol.

Soon thereafter, police officers Robert Zulick and Paul Lackenbach arrived on the scene. As they entered the front door of the house, they encountered the defendant standing above Torres-Arroyo's bloody body in the hallway. The defendant pointed his pistol at the officers and ordered them to shoot him. The defendant did not heed the officers' warnings to drop his pistol. The officers, however, realized that the slide mechanism on the defendant's pistol had locked and that he was unable to release the slide to discharge the pistol. The officers charged the defendant. Zulick suffered a broken nose in the ensuing struggle. Eventually, the officers restrained the defendant and put handcuffs on him. The defendant told one of the officers, "I should have shot you, too."

Israel Arroyo's unconscious and bloody body still remained on the kitchen floor, near where the police were restraining the defendant. Another officer, Bruce Nease, had responded to the scene and attempted to revive Israel Arroyo. He regained consciousness for a brief time, long enough to see the defendant on the floor nearby. Israel Arroyo pointed to the defendant and uttered, "He shot me." Israel Arroyo later died as a consequence of his gunshot wounds as paramedics were transporting him to a hospital. Torres-Arroyo survived the attack and, after a sustained period of recovery, involving multiple surgeries, she continues to suffer from her injuries. One of the bullets that the defendant fired at her still remains lodged in her pelvis.

I

The defendant first claims that the court deprived him of his constitutional right to present a defense when

it failed to instruct the jury that it had to decide whether his use of cocaine left him so intoxicated that he lacked the specific intent to commit murder and intentional assault. We disagree.

The defendant did not dispute that he shot the victims. He claimed, however, that he was too intoxicated at the time of the shootings to form the specific intent to kill or cause serious physical injury. In support of that defense, the defendant testified that he consumed a large quantity of alcohol on the night of the shootings. The defendant also testified that he purchased an estimated five or six bags of cocaine that night and that he ingested the cocaine shortly thereafter. The defendant testified that his use of those substances caused him to have no memory of having shot the victims.

The defense called as a witness Peter M. Zeman, a licensed physician specializing in forensic psychiatry. Zeman testified that the defendant's excessive alcohol consumption over a relatively short period of time could have caused the defendant to have experienced a "blackout" state on the night of the shootings.[6] Zeman testified that a person in that state could appear to be relatively normal, but would be unable to record or retain memory of events that transpired during that period of time. Zeman also testified that such excessive alcohol consumption would "severely affect" a person's decision-making or thought processes, and his or her ability to plan, reason and exercise judgment.

Zeman's testimony concerning the effects of the defendant's alleged cocaine use on the night of the shootings was much less extensive and was very different from his testimony concerning the effects of the defendant's alcohol consumption. Zeman estimated that the defendant might have ingested as many as five

---

[6] Zeman testified that he based his expert opinions concerning the defendant's mental state on "reasonable medical or psychiatric certainty."

or six bags of cocaine on the night of the shootings. He testified that cocaine is a stimulant, and that it "can cause people to be more excited and more impulsive," and to experience an increase in blood pressure. He also noted that most people who use an excessive amount of cocaine, more than three or four bags, will become paranoid or excessively vigilant. Zeman testified, however, that the blackout state he discussed previously in his testimony was "completely dependent" on alcohol consumption, not cocaine use. Zeman also stated that all of his testimony about the possible or likely effects of alcohol and cocaine on the defendant on the night of the shootings was based on the weighty assumption that the defendant had testified truthfully concerning the amount of alcohol that he consumed and the amount of cocaine that he ingested.

The defendant submitted a charge to the court, requesting, inter alia, that the court remind the jury of the testimony concerning the defendant's ingestion of intoxicants, including alcohol and cocaine, prior to the shootings. He also requested that the court instruct the jury that it was to consider the effect of those intoxicants, if any, on the defendant's ability to form the necessary mental states required for the crimes he stood charged with having committed.

The court's instruction as to the defense of intoxication mirrored the defendant's requested charge in many respects.[7] The basis of the defendant's claim, however,

[7] The court instructed the jury concerning intoxication as follows: "I'm going to instruct you with regard to intoxication, ladies and gentlemen, and you have heard that referred to. You've heard some testimony as to the effect that the defendant was under the influence of an intoxicant, namely alcohol, at the time of the alleged acts. The Penal Code defines intoxication as a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body. If you find that the defendant was under the influence of an intoxicant at the time of the alleged acts, you must then determine what effect, if any, this voluntary intoxication had on his ability to form the specific intent required to commit the alleged crimes. The Penal Code states that 'intoxication shall not be a defense to a criminal charge, but in any prosecution for an offense, evidence of intoxication of

is the following passage from the court's charge: "I'm going to instruct you with regard to intoxication . . . . You've heard some testimony as to the effect that the defendant was under the influence of an intoxicant, namely alcohol, at the time of the alleged acts." The defendant argues that the court's failure "to include cocaine as an intoxicant gutted the intoxication instruction and deprived him of his only defense to the crimes."[8]

The defendant claims that the court improperly instructed the jury, thereby denying him his constitutional right to present a defense under the sixth amendment to the United States constitution,[9] which is

the defendant may be offered by the defendant whenever it is relevant to negate an element of the crime charged. Note that intoxication is not a defense to or an excuse for the commission of a crime. It is only relevant to negate an element of the crime charged such as intent. If you find that the defendant was intoxicated at the time of the crime, you may take this fact into consideration in determining whether he was in such a state of intoxication as to be incapable of forming the required specific intent, which is a necessary element for the commission of the crime of murder, and also, by the way, [assault in the first degree,] but I will bring you up to date on that when I get there."

Later in the charge, when the court instructed the jury on the lesser offense of reckless assault, the court stated: "If you find that the defendant, due to self-induced intoxication, and again I refer you to the intoxication— I have given you that definition—is unaware of . . . or disregards or fails to perceive a risk which he would have been aware of had he not been intoxicated, such . . . unawareness, disregard or failure to perceive . . . shall be immaterial."

[8] The defendant preserved this issue for our review because he filed a written request that the court instruct the jury in this regard in accordance with Practice Book § 42-16. We observe, however, that the defendant did not take exception to this portion of the court's instruction immediately following the court's charge or at any other time following the charge.

[9] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

applicable to the states through the fourteenth amendment,[10] and under the due process clause of article first, § 8, of the constitution of Connecticut.[11] Intoxication is a valid theory of defense. General Statutes § 53a-7; see *State* v. *Rosado*, 178 Conn. 704, 708, 425 A.2d 108 (1979). The defendant had a right to present relevant evidence in support of his defense, and he does not claim that the court did not permit him to do so in this case. See, e.g., *State* v. *Bova*, 240 Conn. 210, 236, 690 A.2d 1370 (1997).

Instead, the defendant argues that the court violated his constitutional right by failing to instruct the jury that it could consider evidence of his cocaine use on the night of the shootings. We are guided by the principle that "[i]f the defendant asserts a recognized legal defense and the evidence indicates the availability of that defense, such a charge is obligatory and the defendant is entitled, as a matter of law, to a theory of defense instruction." (Internal quotation marks omitted.) *State* v. *Carter*, 232 Conn. 537, 545, 656 A.2d 657 (1995).

The court did not omit, or refuse to provide, a jury instruction concerning intoxication. To the contrary, the court properly instructed the jury on the defense of intoxication and read relevant language from § 53a-7, which defines intoxication. The issue before us is not one of an improper charge concerning the defense of intoxication, but rather, whether the court improp-

[10] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

[11] The constitution of Connecticut, article first, § 8, provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf . . . and in all prosecutions . . . to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law . . . ."

erly removed from the jury's consideration the defendant's alleged cocaine use on the night of the shootings.

The defendant's challenge essentially focuses on the court's marshaling of the evidence. When marshaling evidence, the court should provide to the jury a fair summary of the evidence adduced at trial so that the jury may "[apply] the law correctly to the facts which they might find to be established . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Hernandez*, 218 Conn. 458, 462, 590 A.2d 112 (1991). We have noted that "[a] trial court often has not only the right, but also the duty to comment on the evidence. . . . The purpose of marshaling the evidence, a more elaborate manner of judicial commentary, is to provide a fair summary of the evidence, and nothing more . . . ." (Internal quotation marks omitted.) *State* v. *Dixon*, 62 Conn. App. 643, 647–48, 772 A.2d 166 (2001).

"Not every improper jury charge . . . results in constitutional error." *State* v. *Schiappa*, 248 Conn. 132, 165, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999). The defendant does not allege that the court delivered a legally deficient explanation of the defense of intoxication or that it engaged in improper or one-sided commentary on the evidence. His claim is not constitutional in nature. See *State* v. *Dixon*, supra, 62 Conn. App. 647–49. We review this nonconstitutional claim to ascertain whether it is reasonably possible that the court's instruction misled the jury. See *State* v. *Taft*, 57 Conn. App. 19, 29, 746 A.2d 813 (2000), aff'd, 258 Conn. 412, 781 A.2d 302 (2001). "[T]he charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge.

. . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Respass*, 256 Conn. 164, 182, 770 A.2d 471, cert. denied, 534 U.S. 1002, 122 S. Ct. 478, 151 L. Ed. 2d 392 (2001).

After carefully reviewing the evidence adduced at trial, we conclude that the court properly omitted the defendant's requested reference to cocaine and its effect on the defendant's mental state on the night of the shootings. As § 53a-7 makes clear, evidence in support of the defense must be "relevant to negate an element of the crime charged . . . ." Zeman testified that the defendant's alcohol consumption could have affected, among other things, his decision-making process and his ability to reason. That evidence bears relevance to the issue of whether the defendant possessed the specific intent to commit the crimes he stood charged with having committed.

In contrast, Zeman's testimony concerning the defendant's cocaine use bore no relevance to the defendant's capacity to form the specific intent necessary to commit the crimes. Zeman's estimate about the number of bags of cocaine that the defendant claims to have ingested, as well as the amount of cocaine that was contained in each bag, was uncertain. He testified, nonetheless, that certain levels of cocaine could have made the defendant more excited or impulsive, more vigilant or even paranoid. In contrast, Zeman testified that alcohol could have affected the defendant's ability to think and make judgments. The latter testimony was relevant to the defense of intoxication. Zeman did not testify, however, that cocaine could have affected the defendant in the same manner.[12]

---

[12] We observe that although counsel's closing arguments certainly do not add or detract from the evidence adduced during trial, the defendant's counsel appears to have abandoned his reliance on intoxication from cocaine as a defense. He remarked that "[i]t's not the cocaine here that's the issue.

We evaluate the court's charge mindful that "[a] jury may not engage in speculation and conjecture to reach a factual result . . . and any inferences that are drawn must be rational and arise out of the evidence that has been presented." (Internal quotation marks omitted.) *State* v. *Gayle*, 64 Conn. App. 596, 601, 781 A.2d 383, cert. denied, 258 Conn. 920, 782 A.2d 1248 (2001). Likewise, "[i]f the evidence would not reasonably support a finding of the particular issue, the trial court has a duty not to submit it to the jury." (Internal quotation marks omitted.) *Opotzner* v. *Bass*, 63 Conn. App. 555, 569, 777 A.2d 718, cert. denied, 257 Conn. 910, 782 A.2d 134 (2001). Accordingly, the court properly tailored its commentary on the evidence to reflect that the jury should consider the defendant's alcohol use when it reached the issue of the defendant's intoxication.

Even if we were to assume that the evidence of the defendant's cocaine use and Zeman's testimony concerning the defendant's cocaine use did bear some relevance to the defense, we would still conclude that the court's omission of the word cocaine from its charge did not deprive the defendant of his right to present a defense. The court did not instruct the jury to disregard evidence about the defendant's use of cocaine. The court reminded the jury that it was the sole finder of fact and that it should rely on its own recollection of the evidence to determine the facts.[13] The court also

It doesn't matter how much he had for cocaine, it's the alcohol. Cocaine doesn't cause the brain to malfunction in that way. The alcohol does. But [the defendant] was forthright and said, 'You know, I—I had some cocaine, too.' He could have denied it, but that's what happened that night, and he wanted you to know the whole story."

[13] The court instructed the jury as follows: "[Y]ou are the sole judges of the facts. Later in the charge, I may refer to some evidence that was brought out during the trial of the case. Now, whether I do or not, it's your recollection of the evidence and not mine, nor the attorneys' which is controlling. No matter what I say concerning these facts or what any of the lawyers have said to you, it's your recollection which is to guide you in deciding this case."

The court later stated: "If I undertake to make some comments, as I am likely to do, my comments are merely suggestive to you . . . . You will

instructed the jury that it should disregard any opinion suggested by the court regarding the facts of the case. The jury was left to assign whatever weight it deemed appropriate to the evidence adduced concerning the defendant's alleged cocaine use. Accordingly, viewing the court's omission in light of its entire charge, we conclude that it was not reasonably possible that the court in any way misled the jury.

## II

The defendant next claims that the court violated his right to a jury trial by deciding, rather than asking the jury to decide, whether he had used a firearm in the commission of a class A, B or C felony for purposes of § 53-202k.[14] We disagree.

The following additional facts underlie the defendant's claim. On March 11, 1998, the state filed a notice of sentence enhancement under § 53-202k. That section is a sentence enhancement provision and does not create a separate offense. State v. Dash, 242 Conn. 143, 148, 698 A.2d 297 (1997). Specifically, the statute provides for a five year term of imprisonment to run in addition and consecutive to any term of imprisonment levied against a person who is adjudged guilty of having committed a class A, B or C felony. The jury convicted the defendant of murder, a class A felony, and assault in the first degree, a class B felony.

The court did not submit the issue of the statute's application to the jury, and the jury rendered no findings

not offend the judge, not offend me, if you disagree on the facts. You are the sole triers of the facts. I merely refer to them on occasion to make clear to you the application of the rules of law which are relevant in this case. If I refer to certain evidence and not other evidence, you are not to think that I mean thereby to emphasize those facts or that I mean to limit your consideration of them. Should I overlook any of the evidence in this case you will supply it from your recollection. Should I incorrectly state any evidence you will correct my error. This is because it's your function and your duty to determine and weigh the evidence offered, to make proper deductions or inferences from it and to determine the facts."

[14] See footnote 5.

in that regard. During the sentencing hearing, the state argued that the court should apply the statute when rendering its sentence. The court applied the statute and imposed an additional five year sentence to run consecutively with the fifteen year sentence it imposed for the conviction of assault in the first degree.[15] The defendant did not object to the court's decision to impose the enhanced sentence.

On appeal, the defendant argues that he "had a statutory and constitutional right to a jury trial on the factual findings necessary for enhancement of his sentence . . . the violation of which was structural error that is not subject to harmless error analysis." We disagree.

The defendant concedes, as he must, that he failed to preserve that issue for our review. He seeks review under the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[16] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional

---

[15] The court's effective sentence totaled eighty years: Fifty years for the crime of murder, fifteen years with an additional five years sentence enhancement for the crime of assault in the first degree, five years for the crime of criminal possession of a pistol or revolver and five years for the crime of risk of injury to a child.

[16] In the alternative, the defendant seeks review under the plain error doctrine set forth in Practice Book § 60-5. Under Practice Book § 60-5, this "court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." We recently have restated that "[t]o prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . This doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Silva*, 65 Conn. App. 234, 243–44, 783 A.2d 7, cert. denied, 258 Conn. 929, 783 A.2d 1031 (2001). As our disposition of the defendant's claim under *Golding* should make clear, we do not find that the claimed error implicates such concerns.

magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40. "The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial. . . . This court may dispose of the claim on any one of the conditions that the defendant does not meet." (Internal quotation marks omitted.) *State* v. *Jones*, 65 Conn. App. 649, 653, 783 A.2d 511 (2001).

We will dispose of the defendant's claim under the fourth prong of *Golding*. Our disposition of the claim is controlled by our Supreme Court's holding in *State* v. *Montgomery*, 254 Conn. 694, 759 A.2d 995 (2000).[17] The defendant claimed in that case, as does the defendant in the present case, that the court violated his constitutional rights by failing to submit the issue of sentence enhancement pursuant to § 53-202k to the jury and by imposing an enhanced sentence in the absence of express findings by the jury concerning the elements of the statute.

The Supreme Court, relying on *State* v. *Velasco*, 253 Conn. 210, 214, 751 A.2d 800 (2000), recognized that "the jury, and not the trial court, is required to determine whether a defendant has used a firearm in the commis-

---

[17] The defendant suggests that our Supreme Court's decision in *Montgomery* improperly conflicts with a defendant's right to have issues decided by a jury and suggests that we decline to follow the harmless error analysis set forth therein. As we have noted several times before, "[w]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them." (Internal quotation marks omitted.) *State* v. *Thomas*, 62 Conn. App. 356, 364, 772 A.2d 611, cert. denied, 256 Conn. 912, 772 A.2d 1125 (2001).

sion of a class A, B or C felony for purposes of § 53-202k." *State* v. *Montgomery*, supra, 254 Conn. 736–37. The Supreme Court further noted that, as in the present case, there was no dispute that the trial court did not submit the issue to the jury. The Supreme Court reasoned, however, that the trial court's error was harmless because it concluded that the jury necessarily had made all the factual findings to support an imposition of an enhanced sentence under the statute.

The *Montgomery* court explained that application of § 53-202k depends on factual findings concerning the two elements of that statute: (1) that the defendant committed a class A, B or C felony and (2) that the defendant committed such felony with the use of a firearm. Id., 737–38. The court further explained that the jury clearly had made a factual determination regarding the first element of the statute because it had convicted the defendant of the crime of murder, a class A felony. Id., 737. It further reasoned that the jury necessarily had resolved the factual determination underlying the second element in the state's favor because the state's case concerning the commission of the felony was closely linked to the defendant's use of a firearm. The state had alleged that the defendant committed the murder with the use of a firearm, and the trial court expressly referenced that allegation in its charge. Id.

The Supreme Court also explained that its resolution was guided by *Neder* v. *United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). *State* v. *Montgomery*, supra, 254 Conn. 737. Our Supreme Court interpreted *Neder* as standing for the proposition that "a jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was *uncontested and supported by overwhelming evidence,* such that the jury verdict would have been the same absent the error

. . . ." (Emphasis in original; internal quotation marks omitted.) Id., 738. Applying that rationale, the court observed that the defendant did not contest the fact, which was supported by incontrovertible evidence, that the perpetrator of the victim's murder inflicted the fatal injuries with the use of a firearm. Id.

Applying the analysis set forth in *Montgomery* to the present case, we conclude that the court's failure to submit the issue of the applicability of § 53-202k to the jury and its imposition of an enhanced sentence under the statute was harmless error. We do so for four reasons. First, the jury convicted the defendant of a class A felony and a class B felony. Second, as in *Montgomery*, the information expressly alleged that the defendant committed his crimes with the use of a firearm, which the state introduced into evidence at trial. Therefore, the jury necessarily had to have found that the defendant committed the murder with that firearm. Third, the court, in instructing the jury on the elements of assault in the first degree, expressly referenced the defendant's alleged use of a pistol.[18] Fourth, the fact that the crimes were carried out with the use of a firearm was uncontroverted and supported by overwhelming evidence. Those reasons lead us to the inescapable conclusion that by finding that the defendant had committed the felonies with which he was charged, the jury necessarily found that he had committed them with the use of a firearm. Accordingly, the defendant's claim fails under the fourth prong of *Golding*.

## III

The defendant's final claim is that the court improperly failed to conduct a preliminary inquiry to determine if a hearing was required to investigate his claim that improper communication between one or more jurors

---

[18] A firearm is defined, inter alia, as a pistol. General Statutes § 53a-3 (19).

and a family member of one of the victims had occurred during trial. We disagree.

The following additional facts underlie the defendant's claim. The jury rendered its verdict on January 19, 2000. On March 13, 2000, the court conducted a sentencing hearing. As the hearing began, the following colloquy occurred between the court, the defendant's counsel and the defendant:

"[Defense Counsel: The defendant] wants to address the court as well. I am asking for a continuance of the sentencing. This was originally set down for last week, and there was some confusion as to the date, then I thought it was on this Wednesday. I have been unable to speak with [the defendant]. As you can see, he was in an altercation. He was attacked by someone. He has been in segregation for the past two weeks and [could not] contact me. He tells me his parents . . . also one of his sons . . . wanted to be present for the sentencing.

"[The defendant] has also indicated to me [that] he has witnesses coming Wednesday to testify as to various acts of jury misconduct, and the private attorney on behalf of [the defendant, whom] he has retained, although I haven't been given this person's name, for the testimony for an evidentiary hearing for Wednesday.

"For those reasons, we request a continuance. The family is on their way and not present, and [the defendant] has these witnesses and other counsel scheduled to come for Wednesday. . . . I believe [the defendant] wanted to address the court as well.

"[The Defendant]: Yes.

"The Court: At this time, what do you think with regards to these matters? . . .

"[The Defendant]: What I want to say, my lawyer right here tells me one of the jurors was talking to the victim's family, and I think that is unfair to me.

"The Court: I am not going to go through facts in regards to this. At this point, you have explained what [the defendant's] problem is, what he thinks and what he wants to do. He explained that to the court; it is on the record. I will not go through it again with [the defendant]. I understand what you said. If he doesn't have anything new to say to me, then I will ask that we proceed.

"[The Defendant]: I have a few things to say to you if you let me.

"The Court: Anything new?

"[The Defendant]: Yes. I have two witnesses about the whole case.

"The Court: I was told that. I will not go through that.

"[The Defendant]: All right.

"The Court: Is that it?

"[The Defendant]: Yeah."

The court denied the defendant's request for a continuance, noting that it had scheduled the sentencing hearing for nearly two months after the conclusion of trial so that the defendant would have an opportunity to procure counsel and present such an allegation, if he so desired, and so that the court could address any such matters prior to sentencing. The prosecutor and Israel Arroyo's daughter addressed the court on behalf of the state. Although the defendant's counsel addressed the court on his behalf, he did not add anything further concerning the defendant's allegation of juror misconduct. At the conclusion of the hearing, the court imposed its sentence.

On appeal, the defendant claims that the court "summarily rejected" his claim of jury misconduct and improperly failed to conduct a preliminary inquiry into the factual allegations to determine if the resolution of the claim required a separate hearing. The defendant claims that by "acting so precipitously, the court deprived itself of the minimum information necessary to exercise its discretion . . . ."

In *State* v. *Brown*, 235 Conn. 502, 519–32, 668 A.2d 1288 (1995) (en banc), our Supreme Court addressed the issue of how a trial court should respond to allegations of juror misconduct. The court also exercised its inherent supervisory power over the administration of justice and held that "a trial court must conduct a preliminary inquiry, on the record, whenever it is presented with any allegations of jury misconduct in a criminal case, regardless of whether an inquiry is requested by counsel." Id., 526. The court stressed that "[a]lthough the form and scope of such an inquiry lie within a trial court's discretion, the court must conduct some type of inquiry in response to allegations of jury misconduct." Id.

The Supreme Court reiterated that the type of preliminary inquiry required of a trial court largely is dependent on the unique factual circumstances of the allegation before it. It instructed trial courts, within the exercise of their sound discretion, to consider the type of inquiry necessary based on the following factors: (1) the private interest involved, (2) the risk of deprivation of a defendant's constitutional right to a trial before an impartial jury and (3) the state's interest in finality of judgments, protecting the privacy of jury deliberations and maintaining public confidence in the jury system. Id., 530–31.

Our limited appellate review of the defendant's claim is to ascertain "whether the trial court's review of alleged jury misconduct can fairly be characterized as an abuse of its discretion." Id., 524. "The trial judge's discretion,

which is a legal discretion, should be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . Moreover, we must make every reasonable presumption in favor of the proper exercise of the trial court's discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *McKnight*, 191 Conn. 564, 576–77, 469 A.2d 397 (1983); see also *State* v. *Riddick*, 61 Conn. App. 275, 282, 763 A.2d 1062, cert. denied, 255 Conn. 946, 769 A.2d 61 (2001). Our review is necessarily fact specific, and our task is to ascertain whether the form and scope of the court's inquiry reflects a balance amongst the aforementioned factors. We are mindful, also, of the overriding principle that the court in any criminal proceeding "must zealously protect the rights of the accused." (Internal quotation marks omitted.) *State* v. *Brown*, supra, 235 Conn. 524.

In *Brown*, the Supreme Court concluded that the trial court in that case had abused its discretion by failing to conduct some type of inquiry into allegations of juror misconduct. In that case, the trial court had received an anonymous letter addressed to it. The letter set forth "specific and facially credible allegations" of juror misconduct. Id., 524–25. The court received the letter in advance of sentencing. The defendant's attorney did not learn of the letter until the day of sentencing and "had only a limited opportunity to ask for an inquiry . . . ." Id., 525.

We now return to the unique characteristics of the allegations of juror misconduct brought before the court in the present case. We consider the fact that the allegation did not come from a disinterested third party or from a juror. The allegation did not even come from the defendant's attorney, who appeared to distance himself from the allegations, stating: "[The defendant] has . . . indicated to me [that] he has witnesses coming Wednesday to testify as to various acts of jury miscon-

duct, and the private attorney . . . he has retained
. . . ." We also observe that the defendant's attorney
did not view the allegations as being so important as
to mention them before stating that the defendant
desired a continuance so that family members might
be present for sentencing. The defendant's attorney did
not state details about the allegations and did not, in
any way, stress their importance or that he believed
that juror misconduct had deprived the defendant of a
fair trial. We also note that the defendant personally
brought those allegations to the court's attention and
that he did so just minutes before the court was sched-
uled to impose its sentence.

The defendant complains that the court should have
conducted an evidentiary hearing, or a more extensive
inquiry, to investigate his claim. We cannot agree. "We
recognize that the trial judge has a superior opportunity
to assess the proceedings over which he or she person-
ally has presided . . . and thus is in a superior position
to evaluate the credibility of allegations of jury miscon-
duct, whatever their source." (Citations omitted; inter-
nal quotation marks omitted.) *State* v. *Anderson,* 255
Conn. 425, 440, 773 A.2d 287 (2001).

Given the defendant's representation and the circum-
stances under which he raised the allegation before the
court, we conclude that the court did not abuse its
discretion in not conducting any further inquiry. The
court stated that the defendant should have raised such
an issue in advance of his sentencing hearing. Although
it is one among many factors for this court to consider,
the fact that the defendant made the allegation at such
a late hour is problematic. We recognize the uncertainty
that could result and the opportunity for fraudulent
claims that could exist if a defendant possessed the
power to control the proceedings against him by being
able to delay or postpone his or her sentencing by

personally making allegations of juror misconduct in this manner just minutes before a court is to impose sentence.

Defense counsel did not corroborate the defendant's allegation in any way. That silence is telling, given the fact that the defendant represented to the court that his counsel was the person who told him that "one of the jurors was talking to the victim's family . . . ." The defendant's counsel did not state whether the alleged conversation occurred during or after trial, the circumstances of the conversation or how he learned of the conversation. No witnesses were present to corroborate the defendant's allegation. Certainly, if the defendant's counsel had witnessed any proscribed jury conduct during the trial, the court reasonably could expect him to have reported such an incident to the court immediately after its occurrence. Likewise, the court would not reasonably expect the defendant's counsel to remain silent if he had witnessed such an incident until just moments before the court was to impose its sentence on his client.

The defendant's counsel did not cite any authority in support of the allegation or the continuance he sought. He did not file a written memorandum to the court concerning the matter. The court has a right to rely on a defense counsel's representations on behalf of his or her client. See, e.g., *State* v. *Stewart*, 64 Conn. App. 340, 349–50, 780 A.2d 209, cert. denied, 258 Conn. 909, 782 A.2d 1250 (2001). Given the defendant's allegation, his counsel's silence on the issue reinforced the likelihood that his allegation was not credible. The defendant's possible motive in making the allegation is obvious, and, after having observed the defendant testify during trial and recognizing that the jury had found him guilty of the crimes, the court could have quickly dismissed the defendant's allegation as having been

fabricated and decided that further inquiry was unnecessary.

The Supreme Court has explained that "[t]here may well be cases . . . in which a trial court will rightfully be persuaded, *solely on the basis of the allegations before it . . .* that such allegations lack any merit. In such cases, a defendant's constitutional rights may not be violated by the trial court's failure to hold an evidentiary hearing, in the absence of a timely request by counsel." (Emphasis added.) *State* v. *Brown,* supra, 235 Conn. 528.

The Supreme Court also has explained, in the context of the first *Brown* factor, that "the trial court should give proper weight to the defendant's [request concerning the allegation], expressed through counsel, to the allegations of jury misconduct. Id., 530. Although the defendant's counsel in the present case did request a continuance, he gave only a very cursory explanation for the request and indicated that he did not even know the identity of the private counsel that the defendant had obtained to represent him.

In discussing the second *Brown* factor, concerning the risk of deprivation of the defendant's right to a trial before an impartial jury, the Supreme Court explained that "[t]he more obviously serious and credible the allegations [of jury misconduct], the more extensive an inquiry is required; frivolous or incredible allegations *may be disposed of summarily. . . .* A proper assessment of the credibility of the allegations will require the trial court to weigh the source of the allegations." (Citations omitted; emphasis added.) Id., 531. In the present case, the court clearly did not find the defendant's bare assertion of misconduct to be credible, especially given the fact that his counsel remained silent and did not bring the defendant's claim before the court in a particularly persuasive manner or even attempt to

corroborate it. Our Supreme Court has stated, in regard to allegations of juror misconduct, that "it is within the discretion of the trial court to make credibility assessments and determine whether the allegations are facially credible." *State* v. *Santiago*, 245 Conn. 301, 337, 715 A.2d 1 (1998). It follows that "where facially credible allegations are made, a certain specific inquiry should follow." Id., 337 n.22. It is clear from the court's actions in the present case that it did not find the defendant's assertions to be facially credible. Because we cannot disagree with that finding, we cannot disagree with the court's refusal to conduct any further inquiry concerning the allegation.

The third *Brown* factor concerns the state's interests in, inter alia, jury impartiality, protecting jurors' privacy and maintaining public confidence in the jury system. Implicit in the court's action is its belief that any further investigation into the alleged misconduct could only invade the privacy of the jurors who served on the case and would not further public confidence in the jury system. For those reasons, the court's dismissal of the defendant's request for further inquiry did not reflect an abuse of discretion.

The judgment is affirmed.

In this opinion FLYNN, J., concurred.

SHEA, J., dissenting in part. I agree with the majority opinion in all respects except its holding that the trial court was not obliged to conduct a preliminary inquiry concerning the defendant's claim of an improper communication between one or more jurors and a member of the victim's family. I disagree with the majority's disposition of that claim without ordering the trial court to conduct such an inquiry to determine whether there is any substance to the defendant's claim of juror misconduct.

The majority opinion recognizes that our Supreme Court has declared that to assure that a defendant's right to a trial before an impartial jury has been fully protected, a trial court must conduct a preliminary inquiry, sua sponte if necessary, whenever it is presented with any allegations of juror misconduct. *State v. Brown*, 235 Conn. 502, 519–32, 688 A.2d 1288 (1995) (en banc). The trial court in this case never made such an inquiry.

Although the *Brown* court left the proper scope and form of such an inquiry to the trial court's discretion, it did offer guidance for the proper exercise of this discretion. Specifically, our Supreme Court observed that the extensiveness of the inquiry might vary with the seriousness and credibility of the allegations of jury misconduct. "The more obviously serious and credible the allegations, the more extensive an inquiry is required; frivolous or incredible allegations may be disposed of summarily. . . . A proper assessment of the credibility of the allegations will require the trial court to weigh the source of the allegations." (Citations omitted.) Id., 531.

The court in the present case summarily dismissed the defendant's allegations without any inquiry into the source of the information. When the defendant stated that there were witnesses who were prepared to come forward to corroborate the alleged misconduct, the court abruptly precluded any further discussion of the matter. At a minimum, the court's evaluation of the credibility of the allegation required inquiry into the identity of the witnesses and the substance of their proposed testimony. Without such an inquiry, the court's summary dismissal of the allegation was an abuse of discretion.

Accordingly, to comply with the edict of our Supreme Court, this case should be remanded for the purpose of conducting an inquiry concerning the defendant's claim of juror misconduct.