STATE OF CONNECTICUT *v.* FRANCIS R. DIXON
(AC 20410)

Schaller, Dranginis and Stoughton, Js.

Argued December 11, 2000—officially released April 10, 2001

*Cameron R. Dorman*, special public defender, for the appellant (defendant).

*Peter A. McShane*, senior assistant state's attorney, with whom, on the brief, was *Kevin T. Kane*, state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Francis R. Dixon, appeals from the judgment of conviction, rendered after a jury trial, of sale of a controlled substance in violation General Statutes § 21a-278 (b)[1] and sale of a controlled substance within 1500 feet of a school in violation of

---

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. . . ."

General Statutes § 21a-278a (b).[2] On appeal, the defendant claims that the trial court improperly (1) marshaled the evidence in favor of the state in its jury instruction, thereby violating his due process right to a fair trial, and (2) failed to give a curative instruction regarding the hearsay statements of a confidential informant. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the morning of March 16, 1999, Detective William Bundy of the Connecticut state police met with Detective John A. John of the Norwich police department to investigate the sale of narcotics within the city of Norwich. To execute an undercover sting operation, the detectives met with a confidential informant. Bundy and the informant went in the informant's vehicle to the area of Sunshine Farms, a convenience store on Central Avenue that is located approximately 1145 feet from the Greenville Elementary School. Meanwhile, John proceeded in a separate undercover vehicle to a nearby location to observe the sale.

Upon reaching Sunshine Farms, the informant placed a telephone call to a beeper number to arrange for the delivery of crack cocaine behind Sunshine Farms. A few moments later, the defendant, wearing a yellow and black jacket, descended from the stairs in the rear of the building. Bundy, who was waiting in the passenger seat of the informant's vehicle, motioned for the defendant to approach the vehicle. In an arms length

---

[2] General Statutes § 21a-278a (b) provides in relevant part: "Any person who violates section 21a-277 or 21a-278 by manufacturing, distributing, selling, prescribing, dispensing, compounding, transporting with the intent to sell or dispense, possessing with the intent to sell or dispense, offering, giving or administering to another person any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school . . . shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section 21a-277 or 21a-278. . . ."

transaction, the defendant sold Bundy two pieces of crack cocaine. Bundy later identified the defendant as the individual wearing the yellow and black jacket who had sold him the crack cocaine.

John also provided identifying information against the defendant. From a distant location, John observed the defendant's approach to the vehicle and the ensuing transaction. Although John could not identify the defendant's face because of the distance, he provided detailed information about the defendant's clothing, in particular, the yellow and black jacket. The detectives later arrested the defendant on the basis of that information.

At trial, the detectives testified about the transaction and identified the defendant as the perpetrator. Several hearsay statements of the informant also were admitted into evidence, without the defendant's objection, through the testimony of Bundy.[3] In an attempt to refute the state's case, the defendant presented two separate alibi defenses. Scott Jones, the defendant's cousin, testified that he was at the defendant's apartment the entire day of the incident and that the defendant never left the apartment. The state, however, contradicted Jones' testimony by proving that he was incarcerated when the incident occurred. Despite that setback, the defendant presented a different alibi through the testimony of his sister, girlfriend and mother, each of whom testified that the defendant was in New Jersey on the day in question.

After the court instructed the jury, the defendant took exception and requested that the court give a curative instruction regarding the hearsay statements of the informant, which request was denied. The jury found

---

[3] Bundy testified in relevant part as follows: "At that particular point, the informant had told me that the informant would need to go to a pay phone, page a person known to the informant as Reggie and that upon paging from the pay phone, that Reggie would descend in a stairwell to the rear of the Sunshine Farms and we would be able to purchase two rocks of crack cocaine."

the defendant guilty as charged, and this appeal followed.

## I

The defendant first claims that the court improperly marshaled the evidence in favor of the state in its jury instruction, thereby violating his due process right to a fair trial. Specifically, the defendant claims that the court emphasized the evidence in favor of the state while unfairly minimizing the evidence supporting the defendant's alibi defenses.[4] Although the defendant did not properly preserve his claim at trial, he seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[5] We conclude that the defendant cannot prevail on his claim, as it fails to satisfy the third prong of *Golding*.

"A trial court has broad discretion to comment on the evidence adduced in a criminal trial. . . . A trial court often has not only the right, but also the duty to comment on the evidence. . . . The purpose of mar-

---

[4] The court's comment to the jury with respect to the alibi defenses in relevant part was: "Here, the defendant has presented what is commonly known as an alibi. . . . The alibi evidence that the defendant has placed before you seeks to convince you that the defendant was elsewhere at the time and therefore could not have committed the crimes charged."

[5] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40. "The first two conditions are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself. . . . We may . . . dispose of the claim by focusing on the condition that appears most relevant under the circumstances of the case." (Internal quotation marks omitted.) *State* v. *Burrus*, 60 Conn. App. 369, 375, 759 A.2d 149 (2000), cert. denied, 255 Conn. 936, 767 A.2d 1214 (2001).

shaling the evidence, a more elaborate manner of judicial commentary, is to provide a fair summary of the evidence, and nothing more; to attain that purpose, the [trial] judge must show strict impartiality. . . . To avoid the danger of improper influence on the jury, a recitation of the evidence should not be so drawn as to direct the attention of the jury too prominently to the facts in the testimony on one side of the case, while sinking out of view, or passing lightly over, portions of the testimony on the other side, which deserve equal attention." (Citations omitted; internal quotation marks omitted.) *State* v. *Gibson*, 56 Conn. App. 154, 159, 742 A.2d 397 (1999).

On review, we do not evaluate the court's marshaling of the evidence in isolation. Rather, "[t]o determine whether the court's instructions were improper, we review the entire charge to determine if, taken as a whole, the charge adequately guided the jury to a correct verdict. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . [I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled." (Citations omitted; internal quotation marks omitted.) *State* v. *Figueroa*, 235 Conn. 145, 170–71, 665 A.2d 63 (1995).

After reviewing the entire charge to the jury, we note that the court repeatedly reminded the jury that it was the sole finder of fact. The court also informed the jury that it should rely on its own recollection of the evidence to determine the facts. In addition, the court instructed the jury that it should disregard any opinion suggested by the court regarding the facts.[6] We con-

---

[6] The court instructed the jury in relevant part as follows: "You are the sole judges of the facts. It is your duty to find the facts. You are to recollect and weigh the evidence, and form your own conclusions as to what the ultimate facts are. . . .

clude that the charge, read in its entirety, did not mislead the jury and, accordingly, the court's marshaling of the evidence did not deprive the defendant of his right to due process. Therefore, the defendant's claim fails under the third prong of *Golding*.

## II

The defendant also claims that the court improperly failed to give a curative instruction to the jury regarding the hearsay statements of the confidential informant. As with his first claim, the defendant did not preserve this claim at trial and now seeks review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40.[7] We conclude that this claim is not reviewable under *Golding*.

Although the record before us is adequate for review, the defendant has failed to allege a claim of constitutional magnitude, as required under the second prong of *Golding*. "Unpreserved hearsay claims do not automatically invoke constitutional rights to confrontation." *State* v. *Grenier*, 55 Conn. App. 630, 646, 739 A.2d 751 (1999), cert. granted on other grounds, 252 Conn. 931, 746 A.2d 794 (2000). It is well settled that "admission of statements that are either irrelevant or impermissible hearsay is not a constitutional error." (Internal quotation marks omitted.) *State* v. *Booth*, 250 Conn. 611, 662, 737 A.2d 404 (1999), cert. denied sub nom. *Brown* v. *Connecticut*, 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000); *State* v. *McIntyre*, 242 Conn. 318, 329, 699 A.2d 911 (1997); see *State* v. *Jones*, 44 Conn. App. 476, 487, 691 A.2d 14 (evidentiary claim not of constitutional magnitude and therefore not subject to *Golding* review), cert. denied, 241 Conn. 901, 693 A.2d 304

"My actions during the trial . . . or in setting forth these instructions of law, are not to be taken by you as any indication of my opinion as to how you should determine issues of fact. If I have expressed or intimated any opinion as to the facts, you are not bound by that opinion."

[7] See footnote 5.

(1997). The defendant, therefore, attempts to place "a constitutional tag on a nonconstitutional evidentiary ruling." (Internal quotation marks omitted.) *State* v. *Grenier*, supra, 647. Because the defendant has failed to allege a claim of constitutional magnitude, as required under the second prong of *Golding*, we decline to review his claim.

The judgment is affirmed.

In this opinion the other judges concurred.