STATE OF CONNECTICUT *v.* KENNETH BARDLIVING
(AC 27799)

Flynn, C. J., and Beach and McDonald, Js.

Argued January 17—officially released July 22, 2008

*Michael Zariphes*, special public defender, for the appellant (defendant).

*Lawrence J. Tytla*, supervisory assistant state's attorney, with whom, on the brief, was *Michael L. Regan*, state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Kenneth Bardliving, appeals from the judgment of conviction, rendered after a jury trial, of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), assault in the second degree in violation of General Statutes § 53a-60 (a) (2), threatening in the second degree in violation of General Statutes § 53a-62 (a) (1), attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-70 (a) (1), and criminal violation of a protective order in violation of General Statutes § 53a-223 (a). On appeal, the defendant claims that (1) the trial court improperly marshaled the evidence in favor of the state during the charge to the jury, (2) the court improperly limited his cross-examination of the victim and (3) he was deprived of a fair trial due to prosecutorial improprieties during closing arguments to the jury. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the morning of February 6, 2004, school had been cancelled due to snow and sixteen year old S[1] was home alone in an apartment in which she lived with her mother, H. S, while home alone, fell asleep while lying on the living room couch watching television and was awakened by the sound of footsteps ascending the stairs to the second floor apartment. S had failed to lock the front door after her mother left for work, and

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

a person, who S recognized as the defendant, her mother's former boyfriend, entered the apartment. Several months earlier, on October 21, 2003, a court issued a protective order that prohibited the defendant from, inter alia, imposing any restraint on, and from threatening, harassing, assaulting, molesting or sexually assaulting H or entering her home. The order extended to H's minor children.

When S asked the defendant what he was doing in the apartment, he assured her that H had given him permission to be in the apartment. The defendant got a glass of water and talked to S about school and her boyfriend. While S continued to watch television, the defendant suddenly placed a knife to her throat. The defendant choked S, causing her to lose consciousness, and attempted to sexually assault her.

After a trial to the jury, the defendant was convicted of burglary in the first degree, assault in the second degree, threatening in the second degree, attempt to commit sexual assault in the first degree and criminal violation of a protective order. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant claims that the court improperly marshaled the evidence in favor of the state during its charge to the jury, and, as a result, he was denied his due process right to a fair trial. Specifically, the defendant claims that the court violated his constitutional right to a fair trial by referencing the state's evidence, and not his evidence, while instructing the jury on an element of the offense of criminal violation of a protective order.[2] We disagree.

---

[2] The defendant does not make a claim based on insufficient evidence. His only claim, with respect to this issue, concerns the court's charge.

The defendant seeks review of his unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[3] We conclude that his claim is reviewable under *Golding* because the record is adequate for review and the claim is of constitutional magnitude. See *State* v. *Dixon*, 62 Conn. App. 643, 647, 772 A.2d 166 (2001). The claim nonetheless does not satisfy the third prong of *Golding* because the defendant has failed to demonstrate that a constitutional violation clearly exists and clearly deprived him of a fair trial.

In addressing the defendant's claim that the court unfairly marshaled the evidence, we note that "[a] trial court has broad discretion to comment on the evidence adduced in a criminal trial. . . . A trial court often has not only the right, but also the duty to comment on the evidence. . . . The purpose of marshaling the evidence, a more elaborate manner of judicial commentary, is to provide a fair summary of the evidence, and nothing more; to attain that purpose, the [trial] judge must show strict impartiality. . . . Fair comment does not become improper merely because it tends to point out strengths, weaknesses, or difficulties of a particular case. . . . The trial court may, at its discretion, call the attention of the jury to the evidence, or lack of evidence, bearing upon any point in issue and may comment upon the weight of the evidence so long as it does not direct or advise the jury how to decide the matter."

---

[3] "Under *State* v. *Golding*, supra, 213 Conn. 239–40, a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; internal quotation marks omitted.) *State* v. *Lawrence*, 282 Conn. 141, 178 n.22, 920 A.2d 236 (2007).

(Citation omitted; internal quotation marks omitted.) *State* v. *Young*, 68 Conn. App. 10, 17, 791 A.2d 581, cert. denied, 260 Conn. 909, 795 A.2d 547 (2002).

"On review, we do not evaluate the court's marshaling of the evidence in isolation. Rather, [t]o determine whether the court's instructions were improper, we review the entire charge to determine if, taken as a whole, the charge adequately guided the jury to a correct verdict. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . [I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Little*, 88 Conn. App. 708, 713, 870 A.2d 1170, cert. denied, 274 Conn. 916, 879 A.2d 895 (2005).

The state presented testimony of Kerri Hall, deputy clerk of the Superior Court, geographical area number ten, concerning the October 21, 2003 protective order. She testified that in geographical area number ten, a protective order usually is prepared by the family relations division, then placed into the file of the state's attorney. She further testified that the prosecutor then presents it to the presiding judge in open court and asks the court to issue the protective order. The court, she testified, then reads the order, adds any other orders it deems necessary, signs it and hands it to the clerk, who hands a copy to the defendant in open court.

Hall further testified that on the basis of her review of the court records, a protective order pertaining to the defendant was issued on October 21, 2003.[4] Hall noted that if the defendant was not present in court

---

[4] The phrase "issued on" was used in the trial court. In context, it is clear that the phrase "issued on" meant served or otherwise formally provided notice to the defendant.

on that day, the courtroom clerk would have made a notation in the file, indicating that the defendant was not present when the order issued. Hall testified that there was no such notation in the defendant's file. The defendant, on the other hand, testified on cross-examination that he was not familiar with the October 21, 2003 protective order issued against him. He testified that on October 21, 2003, he met with a family relations officer but had no recollection of appearing in court or receiving the protective order.

The defendant directs us to portions of the court's charge that, in his view, constituted improper marshaling. With respect to the charge of violation of a protective order, the court instructed in relevant part: "As to the first element, *you may recall there was testimony from the clerk's office regarding issuance of a protective order.* The order was placed into evidence. And because it is a full exhibit, you will consider or may consider the contents of that order as evidence of the case. You may then decide whether the first element has been proven beyond a reasonable doubt, that is, the order was issued by the court. *As to the second element, that the protective order was issued on the defendant, you may consider the same testimony that is referenced in the first element.* You may recall there was no objection to the testimony which I referenced in the first element. There was no objection to [the prosecutor's] having that placed into evidence. But again, you decide if this element has been proven beyond a reasonable doubt." (Emphasis added.) The court concluded that instruction by describing the final two elements of the charge.

The defendant argues that the court, in its instruction to the jury with respect to the second element of the charge of violation of a protective order, namely, that the protective order was issued against him, improperly marshaled evidence in favor of the state because it

instructed the jury to consider only the testimony of the court clerk without instructing that it also could consider his testimony concerning his lack of receipt and lack of notice of the protective order. The defendant further argues that the improper marshaling of evidence also prejudiced him with respect to the unlawful entry element of the charge of burglary in the first degree because the state's theory of unlawful entry was a violation of the protective order.[5]

We conclude, after carefully reviewing the court's instructions, that it is not reasonably possible that the jury was misled by the court's marshaling of the evidence. In its instruction to the jury, the court noted that the testimony of Hall detailing and authenticating the protective order, as well as the protective order itself, came into evidence without objection. The defendant did not contest the authenticity or legality of the protective order itself, and the court instructed the jury that the validity of the protective order was not an issue for it to consider. The court did not address the issue of whether the defendant was aware of the protective order until it subsequently was raised by the prosecutor.[6] At the state's request, the court recharged the jury in relevant part: "Regarding the protective order, one of the things that you would need to find is that the defendant was aware of the protective order. That is one of the issues for you to discuss." During this recharge, the court did not mention the testimony of Hall or the defendant. The court did not mention specifically Hall's testimony suggesting that the defendant

[5] The state limited its theory of unlawful entry with respect to the burglary charge to that of violation of the October 21, 2003 protective order.

[6] We also note that the issue of notice was not addressed during the defendant's direct testimony but was elicited on cross-examination. In closing arguments, the defendant did not address the issue of lack of notice of the protective order.

received the protective order or the defendant's testimony that he did not receive the protective order at any point in the charge.

The court explicitly instructed the jury that it was the sole finder of fact. The court also informed the jury that it should rely on its recollection of the evidence to determine the facts.[7] In addition, the court instructed the jury: "If the court has expressed or intimated any opinion as to the facts, you are not bound by that opinion. What the verdict shall be is your sole [and] exclusive duty and responsibility. If I refer to any of the evidence in this charge, and I may do so, it will be simply for the purpose of illustration and clarification, and you are not to understand that I intend to emphasize any evidence I mention or to limit your consideration to that evidence alone." The court's instruction that the jury is the sole finder of fact and its instruction that it did not intend to place emphasis on any of the evidence are both factors that have been deemed persuasive to show that it was not possible for the jury to be misled by the court's marshaling of the evidence. See *State* v. *Reid*, 254 Conn. 540, 560, 757 A.2d 482 (2000). Further, and most critically, at the state's request, the court recharged the jury concerning the issue of notice. Additionally, the court specifically instructed that the state had the burden of proving the defendant's guilt beyond a reasonable doubt. See *State* v. *Little*, supra, 88 Conn. App. 711–15 (court's charge did not unfairly focus on state's case when it referenced state's evidence concerning motive, not defendant's, but left jury to determine whether defendant had motive to commit crime).

---

[7] The court instructed the jury in relevant part: "You are the sole judges of the facts. It is your duty to find the facts. You are to recollect and weigh the evidence and form your own conclusions as to what the ultimate facts are. . . . The actions of the court during the trial on ruling on motions or objections by counsel or in comments to counsel or in questions to witnesses or in setting forth the law in these instructions are not to be taken by you as any indication of the court's opinion as to how you determine the issues of fact."

We conclude that the charge, when read in its entirety and in light of the language in the additional instruction, reasonably guided the jury in reaching a verdict. Accordingly, the court's marshaling of the evidence did not deprive the defendant of his right to due process. Therefore, the defendant's claim fails under the third prong of *Golding*.

## II

The defendant next claims that the court improperly limited his cross-examination of S, thereby abridging his rights to confrontation and to present a defense under the sixth and fourteenth amendments to the United States constitution.[8] We disagree.

"We traditionally apply a two part analysis to determine whether a party has been deprived of effective cross-examination. First, we determine whether the defendant received the minimum opportunity for cross-examination of adverse witnesses required by the constitution. . . . If so, we then consider whether the trial court's restriction of cross-examination amounted to an abuse of discretion under the rules of evidence. . . .

"We first look to whether the court's preclusion of the evidence constituted a violation of the defendant's constitutional right to confrontation. Generally, under the constitutional right to confrontation, a defendant

---

[8] The defendant also alleges a violation of article first, § 8, of the Connecticut constitution. We decline to reach the defendant's state constitutional claim because it does not meet the standard enunciated in *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992). "We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim . . . ." (Internal quotation marks omitted.) *State* v. *Sinvil*, 270 Conn. 516, 518 n.1, 853 A.2d 105 (2004). Consequently, we analyze the defendant's arguments only under the United States constitution.

is allowed broad latitude to test the veracity and credibility of the witnesses testifying against him. . . . The confrontation clause does not, however, suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . . Only relevant evidence may be elicited through cross-examination. . . . The court determines whether the evidence sought on cross-examination is relevant by determining whether that evidence renders the existence of [other facts] either certain or more probable. . . .

"The proffering party bears the burden of establishing the relevance of the offered testimony. Unless such a proper foundation is established, the evidence . . . is irrelevant. . . . This may be accomplished in one of three ways. First, the defendant can make an offer of proof. . . . Second, the record independently can be adequate to establish the relevance of the proffered testimony. . . . Finally, the defendant can establish a proper foundation for the testimony by stating a good faith belief that there is an adequate factual basis for his inquiry. A good faith basis on the part of examining counsel as to the truth of the matter contained in questions propounded to a witness on cross-examination is required. . . . A cross-examiner may inquire into the motivation of a witness if he or she has a good faith belief that a factual predicate for the question exists. . . .

"In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions

that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Grant*, 89 Conn. App. 635, 639–41, 874 A.2d 330, cert. denied, 275 Conn. 903, 882 A.2d 678 (2005). We examine the defendant's claims under this framework.

A

The defendant first claims that his rights to confrontation and to present a defense were violated when he was not permitted to question S concerning whether he was at the apartment for her birthday in 2003. We disagree.

The defendant specifically argues that the precluded question was relevant because it would have established that he "was a welcomed and invited guest, which would have corroborated his later testimony concerning his lack of knowledge of the protective order, his partial residency at the dwelling, and his affair with S and ongoing relationship with H, but it also would have tended to impeach S concerning her bias, prejudice and motive in testifying against him . . . ." He also argues that such an examination would have helped to demonstrate that neither he nor S were aware of the existence of the protective order. The defendant does not state specifically how the precluded testimony would relate to S's bias, prejudice or motive in testifying against him. We note, however, that the defendant was able to cross-examine S concerning her version of the events that had transpired on the date in question, including the extent of a struggle between the defendant and S, if any, and the accuracy of her statement to the police.[9]

---

[9] In her statement to the police, S indicated that she fell asleep while watching television. The statement indicated that the defendant entered the apartment and engaged her in conversation concerning school and her boyfriend. S further indicated in her statement that the defendant put a knife to her throat, choked her, causing her to lose consciousness, and attempted to sexually assault her.

He also was able to elicit testimony from S that on the day in question, the defendant was not an unwelcomed guest and that S heard the defendant indicate, upon arriving, that he had permission from H to be in the apartment. We conclude that the court's preclusion of S's testimony as to whether the defendant was present at the apartment for S's birthday in 2003 did not deprive him of his rights to confrontation or to present a defense.

Even if we were to assume that the defendant could have suggested through this testimony that he did not receive notice of the protective order or that the testimony otherwise could have bolstered his credibility or demonstrated S's bias, prejudice or motive in testifying against him, the defendant acknowledges that the testimony did not appear to be relevant at the time it was offered, nor was a sufficient foundation laid at that time. Specifically, he observes in his brief to this court that "the proffered testimony concerning unlawful entry in relation to the other elements and defenses of the defendant's case . . . *wouldn't be apparent until* the defense presented its case and [the] defendant took the [witness] stand and recounted his version of the events much later in the trial." (Emphasis added.) At the time the testimony was offered, defense counsel noted that the purpose of the offer was to contest the state's claim of unlawful entry regarding the burglary charge. The prosecutor responded that the state's only theory for unlawful entry was the violation of the protective order. Therefore, at the time it was offered, the issue of permissive entry was not relevant.

Furthermore, as the court stated in sustaining the prosecutor's objection to the question at issue, the defendant did not lay a proper foundation for the question because there was no evidence as to whether the birthday occurred after the date the protective order was signed in October, 2003. The record reveals that

the defendant was not prevented from making an offer of proof. The defense also did not recall S as a witness after the defendant testified.

For the foregoing reasons, we conclude that the court did not abuse its discretion by precluding that line of inquiry at the time it was offered. Thus, the defendant's rights to confrontation and to present a defense were not violated.

B

The defendant next claims that his rights to confrontation and to present a defense were violated when he was not permitted to question S concerning whether he had been at the residence between October, 2003, and February 6, 2004, on occasions when S was not present. We disagree.

The defendant did not object to the court's ruling with which he now takes issue on appeal. Accordingly, our review of this claim is governed by *State* v. *Golding*, supra, 213 Conn. 239–40. "As noted previously, a claim is reviewable under *Golding* if the record is adequate to review the claim and the claim is of constitutional magnitude alleging the violation of a fundamental right. . . . It is well established that every evidentiary ruling that denies a defendant a line of inquiry is not a violation of his constitutional rights. The defendant's right to confront witnesses against him is not absolute, but must bow to other legitimate interests in the criminal trial process. . . . Accordingly, [t]he defendant can not raise a constitutional claim by attaching a constitutional label to a purely evidentiary claim or by asserting merely that a strained connection exists between the evidentiary claim and a fundamental constitutional right. . . .

"Thus, [o]nce identified, unpreserved evidentiary claims masquerading as constitutional claims will be summarily dismissed. . . . We previously have stated

that the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue is involved." (Citations omitted; internal quotation marks omitted.) *State* v. *Gerald W.*, 103 Conn. App. 784, 797–98, 931 A.2d 383, cert. denied, 284 Conn. 933, 935 A.2d 152 (2007).

The defendant's unpreserved evidentiary claim fails under the second prong of *Golding*. The defendant effectively cross-examined S, during which time he was able to elicit testimony from her that he was not an unwelcomed guest and that upon seeing him in the apartment, S did not ask him to leave.[10] Under the circumstances of this case, we conclude that the constitutional standard of confrontation was met, and, therefore, the court's ruling merely was evidentiary in nature. Accordingly, we decline to review the defendant's unpreserved evidentiary claim.

## III

The defendant next claims that he was deprived of a fair trial as a result of prosecutorial impropriety. We disagree.

---

[10] Specifically, S, during the defense cross-examination, testified as follows:

"[Defense Counsel]: You told him to go into the kitchen?

"[The Witness]: Yes. He asked for soda, and I said, you know, we don't have soda here. So, I told him he could have a glass of water.

"[Defense Counsel]: So, I guess it's fair to say, at least at this point, at no time after seeing [the defendant] in the apartment did you tell him to leave the apartment.

"[The Witness]: No.

"[Defense Counsel]: Is it fair to say although you hadn't seen him in some time, he wasn't an unwelcome guest in your apartment? It was a surprise to see him?

"[The Witness]: It was a surprise to see him because he hadn't been there in so long.

"[Defense Counsel]: But you didn't tell him to leave?

"[The Witness]: No.

"[Defense Counsel]: So, I guess it's fair for us to say that he wasn't unwelcome in the sense of a stranger walking into your house?

"[The Witness]: No."

At trial, the defendant failed to object to the alleged instances of prosecutorial impropriety with which he now takes issue on appeal. "Once prosecutorial impropriety has been alleged, however, it is unnecessary for a defendant to seek to prevail under *State* v. *Golding*, [supra, 213 Conn. 239–40], and it is unnecessary for an appellate court to review the defendant's claim under *Golding.* . . . The reason for this is that the touchstone for appellate review of claims of prosecutorial [impropriety] is a determination of whether the defendant was deprived of his right to a fair trial, and this determination must involve the application of the factors set out by this court in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987)." (Citation omitted; internal quotation marks omitted.) *State* v. *Fauci*, 282 Conn. 23, 33, 917 A.2d 978 (2007).

We conduct a two step inquiry in analyzing claims of prosecutorial impropriety. "The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial." (Internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 572, 849 A.2d 626 (2004). We recognize that "because closing arguments often have a rough and tumble quality about them, some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Nevertheless, [w]hile a prosecutor may argue the state's case forcefully, such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Antonio A.*, 90 Conn. App. 286, 298, 878 A.2d 358,

cert. denied, 275 Conn. 926, 883 A.2d 1246 (2005), cert. denied, 546 U.S. 1189, 126 S. Ct. 1373, 164 L. Ed. 2d 81 (2006).

"The issue is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . [The court] must view the prosecutor's comments in the context of the entire trial." (Internal quotation marks omitted.) Id., 297. "[T]he fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial [impropriety]. . . . It is in that context that the burden [falls] on the defendant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted." (Internal quotation marks omitted.) Id., 301. The factors to be considered in assessing the prosecutor's actions include "the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted.) *State* v. *Williams*, supra, 204 Conn. 540.

Having set forth the applicable legal principles, we now examine the challenged remarks in turn.

## A

The defendant first claims that the prosecutor committed improprieties when he expressed his personal opinion as to the credibility of S and the defendant. We disagree.

"It is well settled that [a] prosecutor may not express his own opinion, either directly or indirectly, as to the

credibility of witnesses . . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony. . . . These expressions of opinion are particularly difficult for the jury to ignore because of the special position held by the prosecutor. . . . The jury is aware that he has prepared and presented the case and consequently, may have access to matters not in evidence . . . which the jury may infer to have precipitated the personal opinions. . . . The prosecutor may, however, argue to the jury that the *evidence* and the reasonable inferences to be drawn therefrom should lead the jury to a conclusion as to the credibility of witnesses." (Emphasis in original; internal quotation marks omitted.) *State* v. *Morgan,* 70 Conn. App. 255, 287, 797 A.2d 616, cert. denied, 261 Conn. 919, 806 A.2d 1056 (2002).

1

The defendant refers to several instances of what he claims to be improper argument. During closing argument, the prosecutor argued: "[The defendant] is being untruthful to the state police, he is being untruthful—he acknowledges on at least two occasions being untruthful to [Peter M. Zeman, a psychiatrist]." During closing rebuttal argument, the prosecutor argued: "[The defendant] on the other hand, not only sat down with the state police, not having suffered any injuries, not having been rendered unconscious or suffered any injuries, and gave a signed, sworn statement to the police, which, based on his testimony here in court, is obviously a lie in the details. And then you heard that on two more occasions when he was interviewed by . . . Zeman, he persisted in those lies." The defendant argues that the foregoing statements by the prosecutor were an expression of personal opinion and constituted improper argument. Specifically, the defendant cites the fact that the prosecutor used the word "lie." We disagree.

"[I]t is not improper for a prosecutor to comment on the credibility of a witness as long as he neither personally guarantees the witness' credibility nor implies that he has knowledge of the witness' credibility outside the record." (Internal quotation marks omitted.) *State* v. *Wickes*, 72 Conn. App. 380, 388, 805 A.2d 142, cert. denied, 262 Conn. 914, 811 A.2d 1294 (2002). "[E]ven though it is unprofessional, a prosecutor can argue that a defendant is a 'liar' if such an argument is supported by the evidence." (Internal quotation marks omitted.) *State* v. *Dews*, 87 Conn. App. 63, 81, 864 A.2d 59, cert. denied, 274 Conn. 901, 876 A.2d 13 (2005); see also *State* v. *Spyke*, 68 Conn. App. 97, 113, 792 A.2d 93 (prosecutor's characterization of defendant as "liar" supported by evidence), cert. denied, 261 Conn. 909, 804 A.2d 214 (2002); cf. *State* v. *Hilton*, 79 Conn. App. 155, 169, 829 A.2d 890 (2003) (prosecutor's characterization of defendant as "liar" improper); *State* v. *Floyd*, 10 Conn. App. 361, 367–68, 523 A.2d 1323 (same), cert. denied, 203 Conn. 809, 525 A.2d 523, cert. denied, 484 U.S. 859, 108 S. Ct. 172, 98 L. Ed. 2d 126 (1987).

In this case, the prosecutor did not express his opinion as to the defendant's or the victim's credibility. Instead, the prosecutor drew the conclusion that the defendant was untruthful because his trial testimony was contradicted by his statements to the police and to Zeman, with whom the defendant talked concerning the events that transpired on the day in question.[11] The

---

[11] In his statement to the police, the defendant claimed that he remembered being in H's apartment talking to S but that he subsequently blacked out. He next remembered standing over S, who was lying on the floor bleeding from her nose. He stated that S hugged him, told him she loved him and told him to leave. His statement further indicated that S asked him whether he had raped or beaten her and he answered "no" before leaving. At trial, the defendant testified that he had been having an affair with S, who invited him over to the apartment, disclosed to him that she was pregnant and, when he attempted to leave, attacked him with a knife. The defendant testified on cross-examination that although he had told Zeman that he had blacked out while in the apartment with S on the day in question, he, in fact, had not blacked out.

prosecutor's submission concerning the defendant's credibility was fair in light of the testimony of S that contradicted the defendant's testimony.[12] "[I]t is not improper for the prosecutor to comment [on] the evidence presented at trial and to argue the inferences that the jurors might draw therefrom. . . . We must give the jury the credit of being able to differentiate between argument on the evidence and attempts to persuade them to draw inferences in the state's favor, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand." (Internal quotation marks omitted.) *State* v. *Fauci*, supra, 282 Conn. 36.

2

The defendant next argues that the prosecutor improperly vouched for the credibility of S when he stated during closing argument: "[S] also told you something, and again, it's one of those little details—either she is diabolically clever or it's another indication of credibility; she told you that in her fear she wet her pants, she urinated. And that is not the kind of thing that people disclose casually; that's embarrassing. And in the context of everything else, she noted that to the police and to you." We disagree with this claim.

This remark was not based on personal opinion and was not an improper attempt to bolster the credibility of S. "[I]t is not improper for a prosecutor to remark on the motives that a witness may have to lie, or not to lie, as the case may be." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269 Conn. 585. Accordingly, it was not improper for the prosecutor to argue that S did not have a motive to lie about this detail because it was embarrassing and people normally do not disclose embarrassing details that are untrue.

[12] S testified that the defendant choked her, causing her to lose consciousness, and attempted to assault her sexually.

The prosecutor simply directed the jurors to draw inferences from their knowledge and common experience.

3

The defendant also claims that during closing argument, when referring to the defendant's testimony and character, the prosecutor improperly used the words "I think" followed by negative adjectives and phrases, such as "remarkable," "extraordinary," "outrageous," "fantasy," "bizarre," "incredible," "narcissistic," "act of desperation," "sense of narcissism," "shameless" and "lame." The defendant argues that the use of the words "I think" was improper because it was an expression of personal opinion. We disagree.

"Although logic dictates that the use of 'I' increases the likelihood that a statement is an expression of one's personal opinion, it is not necessarily so. The use of 'I' is an integral part of our lexicon that is not easily eliminated from speech. Therefore, we must look at the statement, including the use of the pronoun 'I,' as a whole, in determining whether it was an expression of the [prosecutor's] personal opinion regarding the credibility of witnesses." *State* v. *Fauci*, supra, 282 Conn. 38.

Our review of the record leads us to conclude that the prosecutor was commenting on the evidence and arguing the inferences that the jurors reasonably could draw therefrom. The prosecutor did not impermissibly inject his personal beliefs or opinions into his argument or imply that he had knowledge of the defendant's credibility obtained from outside of the record. He merely was commenting on the inferences that could be drawn from the evidence and, because those inferences were supported by the evidence, the remarks were not improper. See *Jenkins* v. *Commissioner of Correction*, 52 Conn. App. 385, 401, 726 A.2d 657, cert. denied, 249 Conn. 920, 733 A.2d 233 (1999).

## B

The defendant also claims the prosecutor improperly appealed to the emotions, passions and prejudices of the jurors during closing argument. We disagree.

"It is well settled that [a] prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal. . . . Therefore, a prosecutor may argue the state's case forcefully, [but] such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Nevertheless, [w]hen making closing arguments to the jury . . . [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument." (Internal quotation marks omitted.) *State* v. *Farr*, 98 Conn. App. 93, 107–108, 908 A.2d 556 (2006).

## 1

The defendant claims that during closing argument, when referring to the defendant's testimony and character, the prosecutor improperly used negative adjectives and phrases, such as "remarkable," "extraordinary," "outrageous," "fantasy," "bizarre," "incredible," "narcissistic," "act of desperation," "sense of narcissism," "shameless" and "lame." In addition to claiming that the use of the words "I think" in relation to these adjectives and phrases was improper, which we have addressed previously, the defendant also argues that the use of the adjectives and phrases was improper because it appealed to the emotions, passions and prejudices of the jurors. We disagree.

"[W]hile a prosecutor may argue the state's case forcefully, such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Antonio A.*, supra, 90 Conn. App. 298. In each instance, the transcript reveals that the prosecutor was commenting on the evidence and arguing the inferences that the jurors could reasonably draw therefrom. Our review of the record leads us to conclude that the prosecutor's remarks were based on the evidence and did not divert the jury from the facts of the case. Accordingly, we reject the defendant's claims that these remarks improperly appealed to the jury's emotions.

2

The defendant last refers to the prosecutor's statement made during closing argument that S and the defendant both testified that S had lost consciousness during the incident and that it was a "big deal" that the defendant had caused the unconsciousness. The defendant argues that this comment appealed to the jurors emotions, passions and prejudices by asking them to experience this type of event themselves. We disagree.

The prosecutor's remarks were based on the evidence and did not divert the jury from the facts of the case. The prosecutor commented on the evidence that S and the defendant both testified that S had lost consciousness and suggested that being rendered unconscious by another was an unusual occurrence and was a significant event for the jury to consider. We reject the defendant's claim that this remark improperly appealed to the jury's emotions.

The judgment is affirmed.

In this opinion the other judges concurred.