# STATE OF CONNECTICUT *v.* ALI PEEPLES
## (AC 34403)

Lavine, Robinson and Schaller, Js.

Argued October 16, 2012—officially released April 30, 2013

*Glenn W. Falk*, assigned counsel, for the appellant (defendant).

*James M. Ralls*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Anne Mahoney*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Ali Peeples, appeals from the judgment of conviction, rendered following a jury trial, of one count sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). The defendant claims that the trial court (1) improperly admitted testimony that he was watching pornography at the time he was arrested and (2) unfairly marshaled evidence in favor of the prosecution when it summarized in its jury instructions the testimony of an expert witness. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim, S,[1] began residing with her grandmother when she was six years old. When S was about nine years old, she would frequently visit her aunt, who was in a relationship with the defendant. While S visited

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

her aunt's home, several incidents of a sexual nature involving the defendant and S occurred. S specifically alleged that the defendant engaged in penile-vaginal intercourse with her on more than one occasion, and put his penis into her rectum once. S also stated that the defendant had her touch his penis and that he touched her vagina. S sought treatment for rectal bleeding and an inability to use the bathroom, but did not disclose the abuse to the medical staff during her hospital visits.

S first disclosed the abuse to a guidance counselor at her school in the fall of 2004.[2] S eventually reported the abuse to her mother, a friend, her aunt and her grandmother when she was approximately eighteen years old. S testified that she waited to tell her grandmother about the abuse because the defendant told her not to tell anybody. After S disclosed the abuse to her family, law enforcement became involved, and in July, 2008, a therapist conducted a forensic interview of S regarding her allegations. The forensic interview was recorded, and the video recording was admitted as a full exhibit at trial and played for the jury.

The defendant was convicted following a jury trial and received a total effective sentence of eighteen years of incarceration, suspended after thirteen years, and ten years of probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first asserts that the court abused its discretion by denying his motion in limine. Specifically, the defendant argues that the court erred in admitting testimony that the defendant was watching pornography at the time of his arrest, as it was not relevant.

---

[2] At that time, the school did not report the allegations made by S to the authorities.

We agree with the defendant and conclude that the testimony at issue was not relevant to establish that the police officers acted appropriately when arresting him. We further conclude, however, that the admission of this evidence constituted harmless error.

The following additional facts are relevant to our resolution of this issue. Prior to trial, the defendant filed a motion in limine to preclude the admission of testimony given during the hearing on the defendant's motion. Eric Gauvin, a Hartford police detective, testified at the hearing that he went to the defendant's residence in order to execute an arrest warrant. Gauvin stated that when the defendant opened the door to his residence, he informed the defendant of the arrest warrant and handcuffed him before proceeding into the home.

The defendant specifically sought to preclude Gauvin's testimony that a pornographic movie was playing on the defendant's bedroom television when Gauvin arrested him on the grounds that such testimony was not probative, that the activity was legal and that the testimony was prejudicial. The state argued that the circumstances in the defendant's home were relevant to determining whether or not Gauvin acted appropriately when arresting the defendant. The court denied the defendant's motion and concluded that the testimony was relevant and that the probative value outweighed the prejudice.

At the defendant's trial, Gauvin testified that he was assigned to investigate the allegations of sexual abuse made by S against the defendant. Gauvin stated that he went to the defendant's home to arrest him, and the defendant answered the door wearing a towel with boxer shorts underneath. Gauvin explained that he and another detective entered the defendant's bedroom with the defendant to assist him in getting dressed in

order to ensure officer safety. Gauvin stated that upon entering the defendant's bedroom "[he] noticed . . . next to the door there was a video playing . . . adult pornographic material." Gauvin explained that he assisted the defendant with dressing and then took him to the Hartford police headquarters. Gauvin then testified about the details pertaining to the defendant's interview and the substance of the defendant's oral and written statements to the police.[3] The circumstances of the defendant's arrest and the video playing in his bedroom were not addressed in Gauvin's subsequent testimony.

The defendant challenges the relevance of Gauvin's testimony that a pornographic movie was playing on the television during the arrest. Specifically, the defendant asserts that the material playing on his television had no bearing on whether Gauvin's arrest was performed properly. We agree that Gauvin's reference to the pornographic movie was not relevant to show that the arrest was proper. We conclude, however, that the defendant has failed to meet his burden of establishing that it is more probable than not that the court's decision to allow this statement into evidence affected the result of his trial.[4]

We begin our analysis of this claim by setting forth the well settled standard of review that is applied to a trial court's evidentiary rulings. "Although certain evidentiary rulings are subject to plenary review . . . the

[3] According to Gauvin's testimony, the defendant stated that while he was wrestling with S, "at some point [she] was unclothed and . . . that she was on his lap and his penis fell out of his boxers . . . [and that his] penis might have rubbed against [S's] butt/crack area and that it might have touched her vaginal area." Gauvin stated that the defendant described his penis as large and S's vaginal opening as tight. The defendant's signed written statement, which was read to the jury and admitted into evidence, stated the same.

[4] The state asserts an alternative ground for this court to affirm the judgment. Because we affirm the judgment of the trial court on the basis of harmless error, we need not address this claim.

vast majority of such determinations are within the trial court's discretion and will not be overturned in the absence of a manifest abuse of that discretion. The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . and only upset it for a manifest abuse of discretion. . . .

"Evidence is relevant if it has any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. Conn. Code Evid. § 4-1. Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, [as] long as it is not prejudicial or merely cumulative." (Citations omitted; internal quotation marks omitted.) *State* v. *Bonner*, 290 Conn. 468, 496–97, 964 A.2d 73 (2009).

We see no merit in the state's assertion that the contested portion of Gauvin's testimony was relevant to establish that the defendant's arrest was proper. The propriety of the defendant's arrest was not disputed at trial. Indeed, the detective could have justified his conduct without any specific reference to the substance of the video playing on the defendant's television. What materials the defendant was viewing prior to his arrest had no bearing on whether the arrest was proper. Because the aforementioned testimony was not relevant to establish a material issue of fact, it should not have been admitted into evidence.

To the extent that the court abused its discretion by admitting this portion of Gauvin's testimony, we conclude that the defendant has failed to demonstrate that he suffered any harm. "When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . As we . . . have noted, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict. . . . [W]hether [the improper admission of evidence] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative . . . the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the [improperly admitted] evidence on the trier of fact and the result of the trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Randolph*, 284 Conn. 328, 363–64, 933 A.2d 1158 (2007).

The defendant's assertions that the error was harmful are unavailing. The testimony at issue was not emphasized by the state, nor was it discussed in Gauvin's subsequent testimony or on cross-examination. Gauvin instead testified primarily as to the substance of the defendant's oral and written inculpatory statements. S also specifically testified as to the nature of the incidents of assault, and her testimony was corroborated by her mother, the guidance counselor to whom she made her initial disclosure and the social worker who conducted her forensic interview.[5] Indeed, the defendant's own inculpatory statements were partially corroborated by S's testimony regarding the incidents of

---

[5] We note that the video recording of the forensic interview was also played for the jury during trial and admitted as a full exhibit.

inappropriate touching.[6] See *State* v. *Ritrovato*, 280 Conn. 36, 58, 905 A.2d 1079 (2006) (sufficiently corroborated confession is most damaging evidence of guilt and usually renders errors harmless); *State* v. *Stevenson*, 269 Conn. 563, 596, 849 A.2d 626 (2004) (same). In light of such evidence, we cannot conclude that it was more probable than not that the jury was affected by the isolated and brief testimony that pornographic material was playing on the defendant's television at the time of his arrest. We therefore conclude that the error in the present case was harmless.

## II

The defendant finally argues that the court improperly marshaled the evidence in favor of the state in its jury instructions, thereby violating his due process right to a fair trial. Specifically, the defendant asserts that the court emphasized expert medical testimony that was given in favor of the state when such testimony could have been summarized more objectively. We are not persuaded. The following additional facts are relevant to our resolution of this issue.

Nina Livingston, a pediatrician specializing in the evaluation of victims of child abuse, testified on behalf of the state.[7] Livingston explained that the history provided by the child is the most common evidence in child sexual abuse cases and that fewer than 5 percent of children have diagnostic findings evident of sexual contact.[8] Livingston stated that she had reviewed S's

---

[6] Gauvin testified that the defendant stated that his penis may have touched S's vagina and anus, and S testified that the defendant engaged in penile-vaginal intercourse with her, attempted penile-rectal intercourse once and touched her genital area.

[7] Livingston testified that for the past five years she has specialized in evaluating children who were referred to her when concern arose about sexual abuse.

[8] Livingston noted that the findings are divided into categories including normal; nonspecific, which can be caused by other medical conditions; indeterminate; and diagnostic findings such as evidence of penetrating trauma, sexually transmitted diseases or the presence of sperm.

medical records, consisting of visits to hospital emergency departments and some primary care records, as well as the recording of her forensic interview. Livingston noted that S had three visits to the emergency department just after she became ten years old for complaints relating to her genital and anal area, including constipation, watery stools, rectal pain and bleeding, and urinary symptoms such as frequency, urgency, burning and blood in her urine. During one of the emergency department visits, S was noted to have an anal fissure, which is a break in the skin, and mucus with blood in it during a rectal examination. Livingston testified that an anal fissure is a nonspecific finding that could be caused by trauma or other medical conditions. Livingston explained that if she had examined S at that time, she would not have been able to say that the fissure was diagnostic of trauma because it is a nonspecific finding that could have been caused by other conditions. Livingston further testified that the urinary symptoms reported by S were also nonspecific, as they could have been caused by a urinary tract infection, and therefore the symptoms were not diagnostic by themselves.

Livingston also testified that on three separate occasions, S's medical records indicated that the health care provider considered sexual contact as a possible cause for her symptoms, but on each occasion sexual abuse or contact was denied.[9] Livingston opined that S's symptoms documented in her medical records were consistent with the history of abuse S provided in her forensic interview. Livingston further stated that based upon S's medical records alone, she was unable to conclude whether or not S had been sexually abused.

The court, in its proposed instructions to the jury, provided a brief summary of the testimony of the

[9] At the time S received treatment, she had not yet disclosed the abuse to anyone.

experts who testified at trial. The defendant objected to the court's summary of Livingston's testimony, arguing that the court's characterization of Livingston's conclusions favored the state because Livingston also testified that S's records were consistent with other medical conditions, including constipation. The defendant specifically argued that the court's summation could be phrased more objectively, like the summaries given for the testimony of expert witnesses Jessica Alejandro and Diane Edell, by stating that Livingston gave her opinion with respect to S's medical records. The state agreed that the court could instruct the jury as the defendant suggested, or that it could instruct that Livingston reviewed S's medical records and gave her opinion. The court overruled the defendant's objection.

The court, when instructing the jury, stated specifically that "Livingston testified that she is a child abuse pediatrician who reviewed [S's] medical records and opined that her medical history [was] consistent with sexual abuse." With regard to the two other experts, the court gave the following instruction: "Jessica Alejandro testified that she is a clinical child interview specialist who interviewed [S] . . . regarding her allegations of abuse . . . . Diane Edell testified that she . . . conducts forensic interviews of children alleging sexual abuse and testified regarding the delayed disclosure of sexual abuse by children."

"A trial court has broad discretion to comment on the evidence adduced in a criminal trial. . . . A trial court often has not only the right, but also the duty to comment on the evidence. . . . The purpose of marshaling the evidence . . . is to provide a fair summary of the evidence, and nothing more; to attain that purpose, the [trial] judge must show strict impartiality. . . . To avoid the danger of improper influence on the jury, a recitation of the evidence should not be so drawn as to direct the attention of the jury too prominently

to the facts in the testimony on one side of the case, while sinking out of view, or passing lightly over, portions of the testimony on the other side, which deserve equal attention. . . .

"On review, we do not evaluate the court's marshaling of the evidence in isolation. Rather, [t]o determine whether the court's instructions were improper, we review the entire charge to determine if, taken as a whole, the charge adequately guided the jury to a correct verdict. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . [I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Andrews*, 102 Conn. App. 819, 821–22, 927 A.2d 358, cert. denied, 284 Conn. 911, 931 A.2d 932 (2007).

We are mindful that the "influence of the trial judge on the jury is necessarily and properly of great weight, and . . . his [or her] lightest word or intimation is received with deference, and may be prove controlling . . . ." (Internal quotation marks omitted.) *State* v. *Malave*, 250 Conn. 722, 735, 737 A.2d 442 (1999), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000). "In a criminal trial, the judge is more than a mere moderator of the proceedings. It is his [or her] responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding." (Internal quotation marks omitted.) *State* v. *Robertson*, 254 Conn. 739, 769, 760 A.2d 82 (2000).

While we agree with the defendant that it would have been preferable for the court to summarize Livingston's testimony in neutral and impartial language that directed the jury to consider more than " 'one side of

the case' "; *State* v. *Andrews*, supra, 102 Conn. App. 821;—an argument to which the state conceded at trial—we are not persuaded that the instruction as given rises to the level necessary to transgress the bounds of fair comment. In fact, the court also instructed the jury that the jury is the judge of an expert's credibility and the weight, if any, it assigns to his or her testimony. Moreover, we find the defendant's reliance on *State* v. *Hernandez*, 218 Conn. 458, 590 A.2d 112 (1991), misplaced. In *Hernandez*, "the court recapitulated nearly all of the state's testimonial and physical evidence, frequently commented favorably on the credibility of the state's witnesses and thoroughly explained how the state's evidence related to the essential elements of the crime charged." Id., 464. In the present case, however, the instruction at issue was brief, was technically accurate and the only evidence the court summarized was the experts' testimony—of which only one summary is contested by the defendant. See *State* v. *Andrews*, supra, 824 ("[t]he defendant's attempt to isolate certain comments by the court is unavailing because those comments must be evaluated in light of the entire charge").

The jury was twice instructed that it was the sole fact finder and that its recollection of the evidence controlled over the court's summary—once at the beginning of the instructions and once at the end.[10] See

---

[10] At the beginning of the charge, the court instructed the jury that it alone was responsible for recollecting and determining the facts, and that it was the sole judge of the facts. When the court instructed the jury regarding the evidence, it specifically charged that "[i]f I refer to any of the evidence in these instructions, it will be simply for the purposes of illustration and clarification, and you are not to understand that I intend to emphasize any evidence I mentioned or limit your consideration to that evidence alone. . . . If I incorrectly state any evidence, you will correct my error because it is your exclusive function to review the evidence and determine the facts established by it. . . . If the court has expressed . . . any opinion as to the facts, you are not bound by that opinion." At the close of its instructions, the court again charged the jury as to its duty to determine the facts.

*State* v. *Fana,* 109 Conn. App. 797, 811, 953 A.2d 898, cert. denied, 289 Conn. 936, 958 A.2d 1246 (2008); see also *State* v. *Bardliving,* 109 Conn. App. 238, 246, 951 A.2d 615 (court explicitly instructed jury it was sole finder of fact and it should rely on its recollection of evidence), cert. denied, 289 Conn. 924, 958 A.2d 153 (2008); *State* v. *Dixon,* 62 Conn. App. 643, 648, 772 A.2d 166 (2001) (court repeatedly reminded jury it is sole finder of fact, it should rely on its own recollection and disregard opinion suggested by court regarding fact). For the foregoing reasons we conclude that the charge, read in its entirety, did not mislead the jury, and therefore, did not deprive the defendant of his right to due process.

The judgment is affirmed.

In this opinion ROBINSON, J., concurred.

LAVINE, J., concurring. I concur in the result.